(Superior Court of Cincinnati, May, 1901.)

JULIA G. BRANNAN v. EUGENE LEWIS, Auditor, et al.

---

Jurisdiction upon the part of the Annual Board of Equalization to add to the tax valuation of certain property belonging to Mrs. B was not obtained where the citation server, not finding Mrs. B. at home, went to the business office of her husband and served the notice upon him, the husband representing that he was agent for his wife.

---

Dempsey, J.

On the hearing of this case, some pretty close questions of law and fact were raised by the evidence; a careful consideration of the case, however, renders it unnecessary to dispose of them.

The petition is filed for an injunction restraining the collection of taxes arising from an addition of $8,130 to the value of certain land of plaintiff, placed thereon by the City of Cincinnati Annual Board of Equalization for the year 1896. The ground of complaint is that said addition was so made without plaintiff's knowledge and without any notice to her of any kind of any intention to make such or any addition to her property.

The testimony of Roberts, the citation server for the board, shows that he took it to the residence of Mrs. Brannan, and that a servant told him Mrs. Brannan was out, and to take it to Mr. Brannan, which he did, and that he served Mr. Brannan personally; that Mr. B, told him he was Mr. B's agent, and Mr. B. signed the envelope which contained the citation, and Roberts returned that to the board.

Mr. Brannan testifies that his wife's residence at the time of the addition was, of course his own, at No 206 East Auburn avenue, Mt. Auburn, but that she was out of the city that year almost continually from June 1st to Oc-

tober 1st. Now, if the action of the board had been based upon the foregoing facts alone, even admitting that Mr. Brannan was agent for that property for Mrs. B., yet under the decision of Britt v. Hagerty, 11 C. C. R., 115, the board acquired no jurisdiction over Mrs. B. to make the addition.

The board is governed by the provisions of section 2804b, as regards notification of the land owner. This section provides that "notice shall be served (1) by delivering a copy thereof to the person or persons interested in said real estate, or by leaving such copy at the usual place of residence or business of such person; or if no such place of residence or of business shall be found in the county, (2) by delivering such copy to the agent in charge of such real estate and collecting the rent thereof; or if no such agent shall be found in the county, (3) by advertisement thereof inserted one time in a newspaper of general circulation in the county in which said real estate is situated. * * * Notice served in accordance with any of the above provisions shall be sufficient.

The Circuit Court of this county, in the above case, in passing upon this section, noticed the peculiarity of its provisions for serving notices and the manner in which they were designated in the brackets, (1), (2), (3), and from these peculiarities and the phraseology deduced this rule of construction, "that while notice served in accordance with any of the three provisions shall be sufficient, yet before an agent can be served it must be shown that the person interested in the property could not be served personally by a copy of the notice, or that such copy of a notice could not be left at his place of residence or business, or such place of residence or business could not be found in the county. And before notice by advertisement would be good it must be shown that the party had an agent in the county, and serving him with copy was impossible, or that no such agent could be found."

This decision was affirmed by the Supreme Court, 37 W. L. B., 404, for the reasons set forth in the C. C. opinion, and hence it makes the law of Ohio upon this point, and consequently under the service in the case at bar, unless other facts appear, the board had acquired no jurisdiction. Now, to overcome this objection the minutes of the board are introduced, which, after reciting the action of the board in ordering notices to be served, proceed to show the action of the board held August 15, 1896, and which is the action herein complained of:

"Notice having been heretofore issued and served, as shown by the records of this board, upon the parties respectively interested in the several pieces of real estate next herein described, that the board would consider and act upon motions to add to or deduct from the tax-value thereof, because of gross inequality and *the parties having been heard* (except those having failed to appear, in which case other testimony was heard), and other evidence being considered, on motion, duly adopted, it was voted to add or deduct from, because of gross inequality, which the board finds to exist, the amount set opposite each to the tax value of the following pieces of real estate, the vote upon each being: Ayes—Doherty, Krohn, Roe, Zumstein, and Mr. President."

Now, one point is clear: Mrs. Brannan personally was never heard, and the board never, by the notice served, acquired jurisdiction over her property. Of course she could have waived the defect of service by appearing before the board and entering into a disputation with the board, or doing some other act that would evince an intention to submit to their power and authority in the matter.

A second point is clear, that Mr. Brannan, even as the duly authorized agent of Mrs. Brannan, might have, under the circumstances of this case, totally ignored the notice served upon him, and no right of Mrs. Brannan would have been affected. In other words, the jurisdictional requirement of service of notice had not been complied with as the law required. So, it may be conceded that Mr. Brannan was the duly authorized agent of Mrs. B., and that the scope of his agency was so extensive that he might, on her behalf, waive the defect in service set forth above herien, and we still have the preliminary question to settle first.

Was what Mr Brannan did a waiver on his part of due service of notice? The evidence of Mr. Brannan, which is wholly uncontradicted on this part, does not show such a waiver. It is pretty hard to lay down a general rule as to what constitutes an appearance, personally, so as to confer jurisdiction to decide, even in the case of the higher courts of record. But the general test is that some act must be done, or steps taken by the person not legally notified, before the board or tribunal, which calls upon it to examine, however slightly, into the merits of the controversy before it, before there can be said to be even a constructive submission to its jurisdiction.

Now, if Mr. Brannan's evidence be examined, it will appear that he never appeared before the board at all, considered either as a number of individuals or as a board; that he did not call upon Mr. Doherty in a room adjoining the session room of the board; what he sought was information from some one as to the object and purpose of the notice served upon him; he attended no hearing before the board, and there is nothing in any of the evidence to show that either he or any one else entered into action of any kind before the board which called for, from them, any inquiry into the merits of the controversy. Such being the effect of this evidence, there was nothing done by Mr. Brannan which waived the defect in the service caused by the failure to leave the notice at Mrs. B.'s usual place of residence. As a consequence, plaintiff will be entitled to her decree.

There is some discrepancy as to the description of the property affected herein, but that is an immaterial matter. and may be corrected in the findings.

Perpetual injunction, as prayed for.

*John C. Healy* and *Malcolm McAvoy,* for plaintiff.

*Gideon C. Wilson* and *O. J. Cosgrave,* contra.